

**U.S. Department of Justice**

Civil Rights Division

Disability Rights Section - NYA
950 Pennsylvania Ave, NW
Washington, DC 20530

September 29, 2014

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

The Honorable Stan Stanart
Harris County Clerk
Elections Division
1001 Preston Street
4th Floor, Room 439
Houston, TX 77002

    Re:    **Investigation of the Harris County Clerk's Office Regarding Polling Place Accessibility DJ No. 204-74-351**

Dear Mr. Stanart:

We write concerning the Department of Justice's investigation of Harris County's voting program under Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12134 (ADA), and the Department of Justice's implementing regulation, 28 C.F.R. Part 35. Title II prohibits discrimination against qualified individuals with disabilities by public entities, such as Harris County. The investigation focused on the physical accessibility of polling places for persons with mobility disabilities and persons with vision disabilities. The Department conducted its investigation by meeting with County officials, reviewing information provided by the County, and surveying 86 polling places used by the County in the January 26, 2013 Special Election for Texas Senate District No. 6. We appreciate the cooperation we received from you and your staff while conducting our investigation and the County's commitment to accessibility.

The Department finds that the County is in violation of Title II by denying voters with disabilities an equal opportunity to participate in the County's voting programs, services, and activities, including by failing to select facilities to be used as polling places that are accessible to persons with disabilities on Election Day and during Early Voting. Set forth below are the Department's findings of fact and conclusions of law, as well as the minimum steps the County must take to meet its legal obligations and remedy the violations the Department has identified.

## I. Background and Findings of Fact

This matter began as a compliance review of the accessibility of the County's polling places for persons with disabilities. In addition to voting in person on Election Day at an assigned polling place, voters may alternatively vote in person during the Early Voting period at designated Early Voting locations, by mail, or curbside on Election Day at an assigned polling place. The Department investigated this matter by reviewing information provided by the County and by conducting site visits to 86 polling places used by the County in the January 26, 2013 Special Election. Based on our site visits and review of other information, the Department finds that there are a number of polling place locations selected by the County and used for Election Day or Early Voting that were not physically accessible to persons with disabilities; of these, many but not all can be made temporarily accessible on Election Day.

We conducted our surveys on January 15-16, 2013, during the Early Voting period (from January 9 to 22, 2013), and on January 25-26, 2013, the day before and the day of the Special Election. Although Harris County generally has over 775 Election Day polling places (many housing multiple voting precincts) and 39 Early Voting polling places, only those within the County's Texas Senate District No. 6, or approximately 142 Election Day polling places and seven Early Voting polling places, were used for the Special Election. The Department surveyed a sample of 86 polling places, including the seven Early Voting locations and 79 polling places used exclusively on Election Day, from different sections of the County and of different types of buildings, including public buildings, schools, churches, private businesses, and community and recreational centers. Four of the Early Voting locations also were used as polling places on Election Day;[1] three of the Early Voting locations were used exclusively as Early Voting locations.[2]

In conducting our surveys, we relied on the Department's ADA Checklist for Polling Places;[3] the 1991 ADA Standards for Accessible Design (1991 ADA Standards), 28 C.F.R. Part 36, App. D; and the 2010 ADA Standards for Accessible Design (2010 Standards), 28 C.F.R. § 35.104.[4] In assessing ADA compliance in this matter, we used the 1991 Standards and the 2010 Standards, as appropriate. In order to remedy the non-compliant elements, however, the County must use the 2010 Standards as a guide.

---

[1] The four locations used both for Early Voting and on Election Day included the Galena Park Library, Hardy Senior Center, HCC Southeast Campus, and Neighborhood Center Ripley House Campus.

[2] The three exclusively Early Voting locations included Baytown Community Center, Harris County Administrative Building, and Holy Name Church.

[3] This publication may be found on-line at www.ada.gov.

[4] Section 35.104 defines the 2010 ADA Standards as the requirements set forth in appendices B and D to 36 C.F.R. Part 1191 and the requirements contained in 28 C.F.R. § 35.151.

In conducting our surveys, we did not review every architectural element at a polling place. We surveyed only those elements necessary to conduct the County's voting program. We looked at off-street parking, if provided; the route from the parking or the street to the building entrance; the building entrance; the route to the voting area; and the voting area. We did not survey each facility to determine if it as a whole is compliant with either Title II or Title III of the ADA; we only assessed whether each facility is accessible on Election Day or during Early Voting as applicable. Additionally, our survey of the parking area was limited as we did not assess whether the parking area included the required number of accessible parking spaces overall; instead we indicated whether the parking area at a polling place had a minimum of one van accessible parking space. We leave the complete review of parking to the County to determine whether it is in compliance with the 2010 Standards (Sections 208 and 502).

Of the 83 Election Day facilities we surveyed, we found that only 29 were accessible on Election Day. Attachment A lists these accessible facilities. Of the remaining 54 Election Day facilities, we found that 49 were not accessible on Election Day, but have non-compliant elements that could be remedied with temporary measures such that the polling place would be accessible on Election Day. Attachment B lists these non-compliant but temporarily remediable facilities, along with a description of the non-complying elements and the temporary measures that will remedy each non-compliant element.

For the remaining five facilities surveyed, we found that they were not accessible on Election Day, and could not be made accessible on Election Day through the use of temporary measures. Permanent, architectural modifications would need to be made in order for these facilities to be accessible to persons with disabilities. Unless the County intends to make permanent modifications, these five polling places must be relocated to an accessible location. These five facilities, along with a description of the non-complying elements, may be found at Attachment C.

Of the seven Early Voting locations, we found that one of the four dual locations was accessible during Early Voting (and also on Election Day). The polling place location, HCC Southeast Campus, is included in Attachment A. We found that the remaining six Early Voting locations were not accessible on Early Voting Days, but have non-compliant elements that could be remedied with temporary measures such that the polling place would be accessible during Early Voting. The list of the non-compliant but temporarily remediable facilities, along with a description of the non-complying elements, is included in Attachment B. We have also included a temporary measure that will remedy each non-compliant element.

## II. Conclusions of Law and Recommended Remedial Measures

Under Title II of the ADA, individuals with disabilities may not be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by a public entity, on the basis of disability. 42 U.S.C. § 12132, 28 C.F.R. § 35.130(a). The Title II regulation, set out at 28 C.F.R. Part 35, reflects and implements the statute's broad nondiscrimination mandate. 42 U.S.C. § 12134 (directing the Attorney General to promulgate regulations). Under Title II and its implementing regulation, a public entity, in providing any aid, benefit, or service, may not afford qualified

3

individuals with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded to others, nor can the entity otherwise limit such individuals in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. *See* 28 C.F.R. § 35.130(b)(1).

A public entity's obligations with respect to selection of sites or facilities in which to provide programs, services, or activities is explicitly addressed in the Title II regulation at 28 C.F.R. § 35.130(b)(4), and provides, in part:

> A public entity may not, in determining the site or location of a facility, make selections—
>
> > (i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.

*Id.* The Title II regulation also requires the County to administer its services, programs, and activities in the most integrated setting appropriate to the needs of persons with disabilities. *Id.* § 35.130(d). "[T]he most integrated setting appropriate" is "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35, app. B (analysis of § 35.130).

Applying the above, the County must ensure that qualified individuals with disabilities can fully participate in and benefit from the County's voting programs, services, and activities. With respect to polling place selection, Title II's site selection regulation prohibits the County from selecting sites for Early and Election Day Voting that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. Thus, in order to afford individuals with disabilities the opportunity to vote alongside their neighbors at their local precinct or to participle in Early Voting with the same ease and convenience offered to nondisabled voters, the County must select polling places that are or can be made accessible to voters with disabilities. Voting is a fundamental right and the hallmark of our democracy, and voters with disabilities should have an equal opportunity to cast a ballot in person on Election Day alongside their friends and neighbors.

In the rare circumstances that the County is unable to select an accessible facility (or one that can be made temporarily accessible) to be used as a polling place in a particular voting precinct, then the Program Accessibility provisions of the Title II regulation would apply to the County's voting program. *See* 28 C.F.R. Part 35, Subpart D. These provisions prohibit a public entity from excluding or discriminating against individuals with disabilities because a facility is inaccessible. *Id.* § 35.149. In such instances, public entities must operate each program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by persons with disabilities, unless doing so would result in a fundamental alteration in the nature of the service, program or activity or in undue financial and administrative burdens. *Id.* at § 35.150(a). When choosing among available methods for meeting program accessibility requirements, a public entity must give priority to those methods that offer services, programs, and activities to individuals with disabilities in the most integrated setting appropriate. *Id.* at § 35.150(b)(1).

Given the architectural barriers at the County's polling places, as summarized above and listed in Attachments B and C, the Department finds that the County has violated Title II by failing to select facilities to be used as polling places that are accessible (including making them accessible through temporary measures) to persons with disabilities on Election Day and during Early Voting. The County has provided no information to indicate that inaccessible sites were selected only after determining that there were no accessible facilities that could serve as polling places in the voting precincts at issue, and therefore Title II's Program Accessibility provisions are inapplicable. We thus conclude that the County's use of inaccessible facilities as polling places has the effect of discriminating against voters with disabilities and denying them the opportunity to participate in the County's voting programs, services, and activities in the most integrated setting appropriate, i.e., at their designated polling place and alongside their fellow citizens.

To remedy the deficiencies discussed above and protect the civil rights of individuals with disabilities who seek to participate in the County's voting programs, services, and activities, the County must, at a minimum, implement the remedial measures identified by the Department as necessary to bring the County's Election Day and Early Voting into compliance with Title II. As summarized above, Attachment B to this letter specifies the accessibility barriers found at each polling place surveyed as well as the temporary measures the County can take to make the polling place accessible on Election Day and during Early Voting. Attachment C identifies those polling places that cannot be made accessible through temporary measures; the County must relocate those polling places to facilities that are or can be made accessible to individuals with disabilities. In addition, the County must assess the remaining County polling places not surveyed by the Department and determine whether temporary measures or relocation to alternative accessible sites are necessary to bring all of the County's polling places into compliance with Title II.

### III. Conclusion

We hope to work with you and other officials in an amicable and cooperative fashion to resolve our outstanding concerns with respect to the County's voting programs, services, and activities. Please contact Elizabeth Johnson, at 202-307-3543 by October 13, 2014 if you are willing to resolve this matter voluntarily in a manner that will bring the County into full compliance with Title II, or if you have any questions regarding this letter.[5]

---

[5] Please note that this Letter of Findings is a public document and will be posted on the Civil Rights Division's website.

We are obligated to advise you that, in the event that we are unable to reach a resolution regarding our concerns, the Attorney General may initiate a lawsuit pursuant to the ADA once we have determined that we cannot secure compliance voluntarily to correct the deficiencies identified in this letter. *See* 42 U.S.C. § 12133-34; 42 U.S.C. § 2000d-1. We would prefer, however, to resolve this matter by working cooperatively with you.

Sincerely,

Rebecca B. Bond
Chief
Disability Rights Section